## UNITED STATES v. SIMON.
### No. 7562.

Circuit Court of Appeals, Third Circuit.

April 1, 1941.

Rehearing Denied May 16, 1941.

680

Stephen P. Piga, of Jersey City, N. J., for appellant.

Irwin L. Langbein, of Washington, D. C., for appellee.

Before BIGGS, MARIS, and GOODRICH, Circuit Judges.

BIGGS, Circuit Judge.

The appellant was a practicing physician in the State of New Jersey for some years. He was indicted for violation of the Harrison Narcotic Act, 26 U.S.C.A. Int.Rev. Code, § 2550 et seq., in that as a physician who had duly registered and paid the taxes required by Section 2 of the act, 26 U.S.C. A. Int.Rev.Code, § 2554, he unlawfully and knowingly sold to Mildred McDermott one hundred sixty-three quarter grain tablets of morphine, not in pursuance of any written order on the form issued for that purpose by the Commissioner of Internal Revenue and not in good faith and not in the course of his professional practice only. The appellant was found guilty upon the single count of the indictment and was sentenced to a prison term of eighteen months. He appeals and presents three grounds any one of which in his view constitutes reversible error and entitles him to a new trial. We will deal with them seriatim.

The District Attorney in his opening statement to the jury said, "The facts very briefly are these. Mildred McDermott, who will testify, is a narcotic addict and had been acquainted with the defendant for a period of approximately five years, during which time she purchased narcotic drugs from this defendant." Objection was made by the appellant to this statement, followed by a motion for the withdrawal of a juror and the declaration of a mistrial on the ground that the District Attorney had addressed the jury on crimes not laid in the indictment. The trial judge stated to the jury that in his opinion the District Attorney's statement did "not charge the defendant with having sold drugs in violation of the Federal Statute". The trial judge went on to say, "If you gather from that [statement] the impression that he [the appellant] was charged with selling drugs in violation of the Statute you will dismiss it from your mind because this defendant is not charged with that violation of the Statute. You may dismiss that statement from your minds. In my opinion he [the District Attorney] did not so state. The motion is overruled."

We do not regard the statement made by the District Attorney as imputing a crime to the appellant. We are of the opinion that ordinarily jurors would not so construe it. If the members of the jury in the case at bar did so construe it we are of the opinion that the trial court's prompt and emphatic instruction to the contrary relieved the situation of any impropriety precisely as if there had been an improper question asked and upon objection the trial court had directed the jury to disregard the question. Cf. Weiner v. United States, 3 Cir., 20 F.2d 522. See also United States v. Penn, 7 Cir., 115 F.2d 672; Blockburger v. United States, 7 Cir., 50 F.2d 795, 798, affirmed 284 U.S. 299, 52 S.Ct. 180, 79 L. Ed. 306. It must also be borne in mind that the statement made by the District Attorney was borne out by evidence subsequently adduced without any objections by the appellant. Since such evidence was clearly admissible we can perceive no reason why a brief reference to it, as part of the background of the case, should not have been made in the opening statement of the District Attorney.

The second point raised by the appellant requires full discussion. One of the defendant's witnesses, a Dr. Gerber, a physician of high standing, was asked the following questions upon direct examination:

"Q. In your observation of Dr. Simon, is his conduct that of an ethical physician? A. As far as I know he has always been an honest gentleman, a good student, and an ethical practitioner.

"Q. And you have had occasion to observe him under you at the hospital? A. Yes, he comes to my clinic Thursday afternoons, and I also see him at conferences on Friday afternoons and evenings."

On cross-examination Dr. Gerber was asked the following questions:

"Q. Now, Doctor, how long have you known Dr. Simon? A. I think since he came to the Post Graduate about 4½ to five years.

"Q. And your association with him has been limited to your association at the clinic? A. Yes.

"Q. You do not know his reputation for ethical practice in the community in which he lives, do you? A. In a roundabout way, yes, I had a little opportunity to observe that through a casual consultation I had with Dr. Simon's patients in Passaic.

"Q. Do you know whether or not he had any previous police or criminal record in his community? A. I do not, but I am sure that he has not.

"Q. You were sure that he has not. A. No, I would not say that, but I am sure that he is not the type that would have.

"Q. Doctor, would you be surprised to learn that he was charged in 1933 with the crime of conspiracy, and that he was charged in 1934 with having performed an abortion?"

At this point counsel for the appellant interposed an objection. A short colloquy followed between the court and counsel for the United States and the defendant. The United States Attorney then stated, "The difficulty is this, I admit on the question of the doctor's previous arrest I should not have shown—". He was cut short by an objection and the court said: "Gentlemen of the jury, you will disregard that statement of the United States Attorney and should not be guided by anything but the testimony in the case." The court, further argument then seeming imminent, sent the jury to the jury room, and, after further discussion, the jury was returned to the box. The District Attorney then asked one further question of Dr. Gerber, as follows: "Q. Doctor, do you know the defendant's general reputation for ethics in the community in which he lives and practices?" Dr. Gerber answered: "A. I do not."

The appellant charges that the foregoing discloses a highly prejudicial error substantially affecting the right of the appellant to a fair trial. It will be noted that the attorney for the defendant did not ask for the withdrawal of a juror and for the declaration of a mistrial and indeed did not even request that the court instruct the jury to disregard the question asked of Dr. Gerber as to whether or not he would be surprised to learn that the defendant had been charged with other crimes.

It will be observed that Dr. Gerber was not offered as a character witness by the defendant and was not qualified by the usual questions asked of witnesses who are about to testify as to a defendant's good character. None the less, the appellant chose to put his conduct as a physician in evidence by a direct question and the witness answered responsively by stating in substance that the defendant, so far as the

witness knew, was an honest man and an ethical practitioner. The door being thus opened, the District Attorney inquired of the witness how long he had known the defendant. and asked a question, not objected to, closely akin to a question which might have been asked with propriety of a qualified character witness, viz., did Dr. Gerber know the reputation of the defendant for ethical practice in the community in which he lived. The witness persisted in implying that he knew enough of the defendant to have knowledge of his reputation for ethical practice in the community. The District Attorney then asked the witness if he was aware as to whether or not the defendant had any previous police or criminal record in the community. Dr. Gerber then stated that he did not know, but was certain that the defendant had no such record. At this point the scope of the cross-examination became as broad as Dr. Gerber's answer. See Stewart v. United States, 9 Cir., 211 F. 41. The District Attorney became entitled to ask questions which might explain the basis of the witness' knowledge of the defendant's conduct in his community. Hardy v. United States, 5 Cir., 256 F. 284, certiorari denied, 250 U. S. 659, 40 S.Ct. 9, 63 L.Ed. 1194. At this point of the trial we think it would have been error if the court had refused to permit these clarifying questions to have been asked. Cf. Meyer v. United States, 5 Cir., 220 F. 822 and State v. Glatzmayer, 79 N. J.L. 238, 75 A. 740.

■ To come now to the question alleged to be prejudicial asked of Dr. Gerber; viz., would he be surprised to learn that the defendant had been charged with the crime of conspiracy and with having performed an abortion. If we are correct in our conclusion that the witness' knowledge of the defendant's conduct was put in issue (and concerning this we entertain no doubt), upon analogy to similar questions asked of character witnesses[1] under almost similar circumstances, we think that the question was not forbidden to the prosecuting officer unless it be shown that he did not ask it in good faith. There is nothing in the record to indicate that the United States Attorney asked the question maliciously or in bad faith.

■ Moreover, as we have indicated, counsel for the defendant, beyond making an objection to the question, did nothing. He was evidently of the opinion that the question was not so prejudicial to his client as to afford a basis for a mistrial and he made no request for any specific instruction by the court to the jury that they should disregard the question. The court itself in the course of the conversation between itself and counsel, while the jury was still in the courtroom, stated plainly to the jury that the jury should not be guided by anything but the testimony in the case. This direction was apposite to the question asked by the District Attorney and the defendant had the benefit of the direction of the court without requesting it. Upon consideration of all the circumstances we conclude that the defendant's right to a fair trial was not substantially affected by the question asked.

■ In the third point urged by the appellant, namely, that substantial and competent evidence entitled the appellant to the benefit of a reasonable doubt, we find little merit. The guilt of a defendant must always be proven to the satisfaction of a jury beyond a reasonable doubt and the trial court's charge upon this issue was clear, specific and adequate. The guilt or innocence of the accused turned upon whether or not the jury believed Mildred McDermott. Admittedly, she was a woman of poor character, a drug addict. But there was nothing inherently unbelievable in her testimony, and if the jury believed it, as they must have, her evidence is quite sufficient to support the verdict. There is no rule to the effect that the testimony of a drug addict requires corroboration. The jury was entitled to believe such of her testimony as it desired to believe or disregard any portion thereof. Though there are inconsistencies in McDermott's testimony they are not such as to render her evidence incredible. The trial court properly sent the case to the jury.

The judgment of conviction is affirmed.

---

[1] See Wigmore on Evidence, Section 988.