**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Herbert Lee THOMAS,
Defendant-Appellant.**

No. 75–2417.

United States Court of Appeals,
Ninth Circuit.

Feb. 9, 1976.

Certiorari Denied May 24, 1976.
See 96 S.Ct. 2210.

Terry J. Amdur, Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

William D. Keller, U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

OPINION

Before BARNES, HUFSTEDLER and WRIGHT, Circuit Judges.

BARNES, Circuit Judge:

Appellant appeals from his conviction on two counts by a jury of the possession and

transfer of an unregistered firearm. We affirm each conviction.

On or about August 9, 1974, defendant-appellant pawned a firearm, described as "a short barrel rifle, .22 caliber, serial number 43070" at the A.B.C. Loan Co. on South Central Street, Los Angeles.

The "rifle" was later measured and had a barrel length of 8½ inches, and an overall length of 16½ inches. This "rifle" was not registered to appellant, nor was it registered under the "National Firearms Registration and Transfer Record" as kept by the Federal Government, in violation of 26 U.S.C. Sec. 5841, nor was a tax paid upon such transfer, 26 U.S.C. Sec. 5811.

The *possession* of such an unregistered firearm is prohibited under 26 U.S.C. Sec. 5861(d). The *transfer* of such a firearm is prohibited under 26 U.S.C. Sec. 5861(e). A *firearm* means a rifle having a barrel . . . of less than 16 inches in length, 26 U.S.C. Sec. 5845(a)(3), or a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches, or a barrel . . . of less than 16 inches in length, 26 U.S.C. Sec. 5845(a)(4).

The firearm was test fired by the government by firing three rounds of ".22 short, long and long rifle rimfire cartridges," and found fully operable.

The term "transfer" includes selling, assigning, *pledging*, leasing, loaning, giving away, or otherwise disposing of.

Appellant asserted when arrested (and at trial produced evidence in his behalf) that he had found the firearm while horseback riding with friends; that it was badly rusted and corroded; that he had thought it was an antique pistol; that he had cleaned it up and had hung it on his wall as a souvenir; that he had never attempted to fire it. Appellant admitted he had pawned the gun.

26 U.S.C. Sec. 5845(a) provides that the term "firearm" shall not include "an antique firearm or any device . . . which, although designed as a weapon, the Secretary or (his) delegate finds by reason of the date of its manufacture, value, de-sign, and other characteristics is primarily a collector's item and is not likely to be used as a weapon." No such finding was here proved nor was any attempt made to prove it. The evidence in fact was to the contrary.

26 U.S.C. Sec. 5845(g) includes a further definition of an "antique firearm" as one not using rimfire or "center fire ignition with fixed ammunition and manufactured in or before 1898 . . . and also any firearm using fixed ammunition" which ammunition is no longer manufactured in the United States. No such proof was here offered nor was any attempt made to prove it. The evidence, in fact, was to the contrary.

Defendant's only defense was to offer proof that he found the weapon on the ground under trash; of his sincere belief that it was "an antique pistol," and that he believed he was not required to register it.

The worth of defendant's defense, resting on his belief that the firearm was an antique firearm, was challenged by the prosecution, in conference with the court prior to trial, in the presence of defendant's counsel. The trial court ruled in favor of the prosecution. The court held the fact that the defendant did not know that the firearm must be registered, or that it had not been registered, or that it was not an antique, or that it was operable, were all immaterial to the case.

The jury during its deliberations, asked the court:

"Does the defendant have to know that the firearm is a short barrel rifle?"

and the court answered:

"No, the defendant does not have to know that the firearm is a short-barrel rifle. The jury must determine from the evidence however whether or not the firearm is a rifle with a barrel less than 16 inches. Please keep in mind all the other instructions given by the court."

No attack is herein made upon this instruction, but upon (1) the court's refusal to give defendant's proposed Instructions No.

One[1] relating to the knowing possession of a firearm, and Two[2] relating to the knowing transfer of a firearm and (2) the court's refusal to give defendant's proposed Instruction No. Three.[3] Also raised is the question whether the court erred in limiting direct and cross-examination of witnesses.

Defendant's proposed and refused instructions were offered to raise the defense of "mistake of fact." The trial court held mistake of fact was no defense. The court gave the government's proposed Instruction No. 7, after modifying it, as follows:

"There is no requirement that the defendant be shown to have a specific intent to commit the crime. The Government does not need to show that the defendant, Herbert Lee Thomas, knew that the firearm was not registered or that he knew he was required to register it. The only knowledge which the Government needs to prove is that the firearm was in his possession."

As is well summarized in *Devitt and Blackmar*, 2d Ed., 1973–74 Supplemental Service, Sec. 34.10:

"It is not necessary that the defendant have knowledge of every feature of a firearm that might subject it to special requirements. All that is necessary is that he have sufficient knowledge to realize that it approaches the area of regulation. *United States v. DeBartolo*, 482 F.2d 312 (1st Cir. 1973)."

This comment is based on an interpretation quoted in *United States v. DeBartolo*, 482 F.2d 312 (1st Cir. 1973), of a Supreme Court case decided subsequent to *United*

*States v. Freed*, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971) [i. e., *United States v. International Minerals & Chemical Corp.*, 402 U.S. 558, at 564–65, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971)], where the Supreme Court said:

"'In *Balint* [*U. S. v. Balint*, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604] the Court was dealing with drugs, in *Freed* with hand grenades, in this case with sulfuric acid and other dangerous acids. Pencils, dental floss, paper clips may also be regulated. But they may be the type of products which might raise substantial due process questions if Congress did not require . . . *"mens rea"* as to each ingredient of the offense. But where, as here and as in *Balint* and *Freed*, dangerous or deleterious devices or products or obnoxious waste materials are involved, the probability of regulation is so great that *anyone who is aware that he is in possession of them or dealing with them must be presumed to be aware of the regulations.'"[4] (emphasis added).

The *DeBartolo* opinion also said:

"The last quoted sentence is the crux of the matter. The Government need not prove that a defendant knows he is dealing with a drug or a weapon possessing every last characteristic which subjects it to regulation. *It is enough to prove he knows that he is dealing with a dangerous device of such type as would alert one to the likelihood of regulation.* If he has such knowledge, and if the particular item is in fact regulated, he acts at his peril. *A shotgun in today's society plainly falls within this category.* One know-

---

1. Appearing in Clerk's Tr. p. 28.

2. Appearing in Clerk's Tr. p. 29.

3. Appearing in Clerk's Tr. p. 30.

4. In *United States v. International Minerals & Chemical Corp.*, 402 U.S. 558, at 564, 91 S.Ct. 1697, 29 L.Ed.2d 178, Mr. Justice Douglas, writing for the Court, refers to an earlier Supreme Court opinion regarding the danger of possession of narcotic drugs, *United States v. Balint*, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922), where the Court stated:

"[The statute's] manifest purpose is to require every person dealing in drugs to ascertain at his peril whether that which he sells comes within the inhibition of the statute, and if he sells the inhibited drug in ignorance of its character, to penalize him." 258 U.S. at 254, 42 S.Ct. at 303.

Were we to substitute the word "firearm" for "drugs", it becomes apparent that the Supreme Court believes that Congress, in its wisdom, has required that the defendant need only know that the item he possesses is a firearm.

ingly participating in the sale of such a lethal instrumentality cannot escape liability by failing to inspect the length of its barrel any more than by failing to inquire into whether it is registered. In *Freed*, it is true, the court assumed that the Government would have to prove that the defendant knew the grenade was a grenade, hence a 'firearm'. Because all grenades are classified as 'firearms,' the issue never arose whether knowing possession of a grenade would give rise to a duty to inspect to see if it was the kind of grenade regulated. But we see no difference in rationale between the duty of one possessing a grenade to ascertain if it is registered, and of one, knowingly transferring a shotgun, to ascertain if by reason of its barrel length it must be registered. *See Warren v. United States*, 447 F.2d 259, 263 (9th Cir. 1971); *United States v. Gardner*, 448 F.2d 617, 619 (7th Cir. 1971); *United States v. Gross,* 451 F.2d 1355, 1360 (7th Cir. 1971). We hold that one who participates voluntarily and knowingly in the transfer of a shotgun may, if the gun is a 'firearm', be found guilty of a violation of Sec. 5861(e) regardless whether he is shown to have actually known that its barrel was under 18 inches. There was no error." 482 F.2d 312, 316–17 (emphasis added).

*See also, United States v. Cowper*, 503 F.2d 130, 131–32 (6th Cir. 1974); *United States v. Vasquez*, 476 F.2d 730 (5th Cir.), *cert. denied*, 414 U.S. 836, 94 S.Ct. 181, 38 L.Ed.2d 72 (1973); *United States v. Gardner*, 448 F.2d 617 (7th Cir. 1971).

In *Sipes v. United States*, 321 F.2d 174, 179 (8th Cir. 1963), then Judge Blackmun, in referring to the predecessor of 26 U.S.C. § 5861(d)(e), stated:

"He said he found it and possessed it for several days. It was in his hands when the arresting officers took it from him. *He knew it was a gun. His possession therefore was a knowing possession. This is all the scienter which the statute requires.* It is not necessary that, in addition to knowing possession, there also be knowledge on the defendant's part

that it was made in violation of § 5821." 321 F.2d at 179.

We conclude the instructions given and refused by the trial court were entirely proper.

The objections made by appellant to the allowance in evidence of expert testimony produced by the government are without merit. They go to the weight of the expert testimony, not to its admissibility.

■ The court's refusal to permit the introduction of self-serving statements offered by defendant as to his belief as to what the weapon was, was perfectly proper, as it was totally irrelevant, as is set forth *supra.*

The convictions are *affirmed.*

HUFSTEDLER, Circuit Judge (dissenting):

I agree with the majority opinion that the scienter element of 26 U.S.C. §§ 5861(d) and (e) excludes any knowledge on the part of Thomas that possession or transfer of the weapon was illegal and any knowledge of the registration provisions of the National Firearms Act. (*United States v. Freed* (1971) 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356.) I disagree with the majority's limitation of the requisite scienter to knowledge that he possessed a firearm.

Scienter is here composed of two elements: (1) Thomas's knowledge that he possessed a weapon, and (2) his knowledge that the weapon was a short barrel rifle. Without the knowledge that the gun he possessed was a short barrel rifle, he did not have the necessary consciousness of the nature of the item he possessed to have scienter. (*See United States v. Freed, supra*, 401 U.S. at 612, 91 S.Ct. 1112 (Brennan, J., concurring).)

Perhaps the halcyon day may come when Americans accept the idea that all guns are "highly dangerous offensive weapons, no less dangerous than . . . narcotics," (*United States v. Freed, supra*, 401 U.S. at 609, 91 S.Ct. at 1118) and when they "would hardly be surprised to learn that possession of [hand guns and rifles like possession of]

hand grenades is not an innocent act." (*Id.*) That day has not arrived. Millions of Americans possess different varieties of hand guns and rifles without any consciousness of wrongdoing, or any suspicion that these weapons are as potentially dangerous as narcotics. As desirable as may be the contrary view, our society does not put hand guns and rifles in the same category of suspected dangerousness as machine guns, hand grenades, sawed-off shotguns, and other lethal hardware.

To be sure, one who knows that the gun he possesses is a short barrel rifle may be presumed to know that his weapon is in a suspect category, along with hand grenades and sawed-off shotguns, but it should be obvious that the presumption cannot arise until he knows that the gun is a short barrel rifle. Knowledge that the weapon is a short barrel rifle does not entail knowledge of "every last characteristic which subjects it to regulation." (*United States v. DeBartolo* (1st Cir. 1973), 482 F.2d 312, 316.) All it means is knowledge that the gun is a rifle with a short barrel.

None of the cases cited by the majority addresses the scienter question before us. *United States v. International Minerals & Chemical Corp.* (1971) 402 U.S. 558, 91 S.Ct. 1697, 29 L.Ed.2d 178 involved a prosecution for a failure to show on shipping papers that the substance shipped (sulphuric acid) was classified as "Corrosive Liquid." The opinion is relevant only for its interpretation of *Freed* as not imposing strict liability, as requiring scienter, and as eliminating from scienter a requirement of knowledge of the content of the statute, the violation of which is charged. In each of the cited cases, including *International Minerals & Chemical Corp., supra,* the defendant knew the nature of the thing he possessed, but he claimed that he did not know that the thing he possessed was proscribed by statute and that such knowledge was an element of scienter. (*United States v. DeBartolo, supra* (sawed-off shotgun transferred by gun dealer); *United States v. Cowper* (6th Cir. 1974) 503 F.2d 130 (M-1 carbine modified by defendant police officer); *United States v.*

*Vasquez* (5th Cir. 1973) 476 F.2d 730 (M-14 automatic rifle used in shooting incident); *United States v. Gardner* (7th Cir. 1971) 448 F.2d 617 (modified shotgun possessed by gun collector).) *Sipes v. United States* (8th Cir. 1963) 321 F.2d 174 arose under a predecessor of the National Firearms Act. Sipes did not claim that he did not know that the weapon that he possessed, and which he himself had altered to make it fireable, was a short barrel rifle. His claim was "that he did not know that it was an 'illegal weapon' or that he was violating the law when he had it or that there was a tax or registration which was required or that the gun was made in violation of any statute." (321 F.2d at 176.) Judge Blackmun (now Mr. Justice Blackmun) acknowledged some intercircuit disharmony over the question whether then 26 U.S.C. § 5851 required scienter and concluded that the question did not have to be reached in *Sipes.* (321 F.2d at 179). Sipes had knowing possession of a rifle he knew was shortened. The only question was whether he also had to know that the rifle was made in violation of the statute. *Sipes* also rejected the defendant's argument that knowledge of the terms of the statute was an element of scienter.

The scienter issue before us is entirely different. Thomas testified about the innocent circumstances of his finding the weapon, and his testimony was corroborated. The district court refused to permit him to testify to his belief that the weapon was an antique pistol and to describe how he had used it as a wall decoration until he pawned it when he needed money. The rejected testimony was directly relevant to the scienter issue, and its exclusion was erroneous.

Despite the refusal of the district court to admit Thomas's testimony in this respect, the jury was aware of the dispositive issue. The jury, during deliberation, asked the court: "Does the defendant have to know that the firearm is a short barrel rifle?" The court's negative response and its earlier instruction that "the only knowledge which the Government needs to prove is that the

firearm was in his possession" were prejudicially erroneous.

Although the *Devitt and Blackmar* instruction quoted by the majority is not nearly as accurate, precise, or adapted to this case as the instruction that the jury framed for itself, it is an adequate statement of the applicable law. But that instruction was not given, and it cannot be squared with the instruction that told the jury that "[t]he only knowledge which the Government needs to prove is that the firearm was in his possession."

I would reverse and remand for a new trial.