**Earl Davis MORGAN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 77–1464.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 10, 1977.

Decided Nov. 1, 1977.

804

David R. Freeman, Federal Public Defender, and David Robards, Asst. Federal Public Defender, Kansas City, Mo., on brief, for appellant.

Bert C. Hurn (former U. S. Atty., presently Ronald S. Reed, Jr., U. S. Atty.) and Kenneth Josephson, Asst. U. S. Atty., Kansas City, Mo., on brief, for appellee.

Before LAY, HEANEY and ROSS, Circuit Judges.

PER CURIAM.

Earl Davis Morgan was indicted on January 27, 1977, for knowing possession of a Colt M 16 machinegun, not registered to him, in violation of 26 U.S.C.A. § 5861(d). On April 21, 1977, he was found guilty of the charge by a jury. Imposition of sentence was suspended, and Morgan was placed on probation for a period of three years. We affirm the conviction.

The appellant makes two allegations of error. The first relates to a technical mistake in the exercise of peremptory challenges which resulted in one black man, Mr. Webb Davis, being temporarily seated as a juror but immediately thereafter being replaced by a white man.

According to the thorough record made by the trial judge as soon as the error was raised, the mistake occurred in the following way: No challenges had been made on the jury list for cause, but one juror had been excused without objection by either counsel. After this one juror was excused, the courtroom clerk *renumbered* the printed list with pencil to reflect that venireman's departure. The trial judge did not change the numbers on his list, however, and in making its strikes the government had used the original printed list of names and numbers which had been provided. As the court stated after the error was discovered: "The net result of it was that it resulted in one strike of the Government being misunderstood by the clerk and by the Court." Due to the error, Mr. Davis was not struck as the government had intended.

The appellant argues that the decision to strike Mr. Davis was racially motivated, that this racism was obvious to the jury, and that due to the juror's subsequent removal for apparent racial reasons the appearance of justice and fairness was not satisfied in this case.

We disagree and find that the trial court did not err for the following reasons: As soon as the list of jurors was read aloud, government counsel alerted the court that there was a problem. The court informed the jury that there would be a five minute delay and asked counsel and the defendant to join him in the library, out of the hearing of the jury, for a discussion of the mistake. The striking process was repeated, and the defendant and his counsel were allowed to remake their strikes after seeing who the government chose to strike. When defendant and his counsel were given their turn, they chose not to change their previous selection of strikes.

The court made a thorough record on how the mechanical error occurred, and defendant's counsel was permitted to ask if the government had had access to the renumbered list, and to question if the error might have been the government's own. Government counsel responded that he was unaware that any renumbering by pencil had taken place, and that he had used only the original list.

Government counsel told the court that: "Our strike had nothing to do with the race, creed, national origin, religion, or any other factor regarding the struck juror." De-

fense counsel, in answer to the court's question, replied that he had "no evidence of racial prejudice."

Although appellant's counsel objected, he did not move for a mistrial or ask that another jury panel be chosen before proceedings continued. The group of jurors which had included Mr. Davis had not yet been sworn as the jury on the case. Moreover, before the court, counsel, and defendant retired to the library for discussion, the court informed the jurors that there was a "little confusion because of the printed number." Before the new panel was announced the trial judge stated: "We had a little confusion on our numbering system, which finally is now straightened out." From this explanation the jurors could infer why the court had allowed Mr. Davis to be replaced.

■ Prior decisions of this court permit peremptory challenges to be exercised "on grounds 'normally thought irrelevant to legal proceedings or official action, namely, the race, religion, nationality, occupation or affiliations of people summoned for jury duty.'" *United States v. Carter*, 528 F.2d 844, 849 (8th Cir. 1975), *cert. denied*, 425 U.S. 961, 96 S.Ct. 1745, 48 L.Ed.2d 206 (1976), *quoting Swain v. Alabama*, 380 U.S. 202, 220, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). Appellant Morgan makes no allegation that the United States Attorney's Office involved in this case has "perverted" the purposes of the peremptory challenge by systematic use of the challenge against blacks over a period of time, in order to deny blacks the same right and opportunity to participate in the administration of justice which whites enjoy. *United States v. Carter, supra*, 528 F.2d at 849. We conclude that the trial court did not abuse its discretion in proceeding with the jury finally selected.

It was also error, the appellant alleges, for the trial court to refuse to instruct that the government must prove defendant's knowledge that he possessed a machinegun as it is defined by the Act. In other words, it is alleged that Morgan must have had actual knowledge that he possessed a weapon which fires automatically.

■ 26 U.S.C.A. § 5861(d) makes it unlawful for any person "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." The definition of "firearm," 26 U.S.C.A. § 5845(a) includes the term "machinegun," and "machinegun" is specifically defined in the next subsection of the Act:

(b) *Machinegun.*—The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. * * *

In rejecting the appellant's contention that the government must prove that the defendant had actual knowledge of the weapon's physical properties as defined by the Act, this court joins several other circuits which have considered the question. Sufficient intent is established if the defendant is shown to have possessed an item "which he knew to be a firearm, within the general meaning of that term." *United States v. Vasquez*, 476 F.2d 730, 732 (5th Cir.), *cert. denied*, 414 U.S. 836, 94 S.Ct. 181, 38 L.Ed.2d 72 (1973). *See also United States v. DeBartolo*, 482 F.2d 312, 316–17 (1st Cir. 1973). In *United States v. Freed*, 401 U.S. 601, 607, 91 S.Ct. 1112, 1117, 28 L.Ed.2d 356 (1971), the Supreme Court concluded that the Act required no specific intent or knowledge that the weapons were *unregistered.* "[The Act] makes it unlawful for any person 'to receive or possess a firearm which is not registered to him.'" (Footnote omitted.) *Id.* Citing an opinion of this court in *Sipes v. United States*, 321 F.2d 174, 179 (8th Cir. 1963) the Supreme Court added:

By the lower court decisions at the time that requirement was written into the Act, *the only knowledge required to be proved was knowledge that the instrument possessed was a firearm.* See *Sipes v. United States*, 321 F.2d 174, 179, and cases cited.

*United States v. Freed, supra,* 401 U.S. at 607, 91 S.Ct. at 1117 (emphasis added).

In *Sipes,* then Circuit Judge Blackmun, referring to the predecessor of 26 U.S.C.A. § 5861(d)(e) had said:

> He knew it was a gun. His possession therefore was a knowing possession. This is all the scienter which the statute requires. It is not necessary that, in addition to knowing possession, there also be knowledge on the defendant's part that it was made in violation of § 5821.

*Sipes v. United States, supra,* 321 F.2d at 179.

In *United States v. Moon,* 492 F.2d 902, 903 (8th Cir. 1974), we reiterated that the act of *possession* of the weapon must be "willing and knowing," but we did not there face the question of the defendant's knowledge with respect to a specific weapon's characteristics. In concluding that it need not be proved that Morgan had actual knowledge that the M 16 was designed to fire automatically or semiautomatically, we approve a rationale now accepted by several courts of appeal. *See United States v. Thomas,* 531 F.2d 419 (9th Cir.), *cert. denied,* 425 U.S. 996, 96 S.Ct. 2210, 48 L.Ed.2d 821 (1976); *United States v. Cowper,* 503 F.2d 130 (6th Cir. 1974), *cert. denied,* 420 U.S. 930, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975); *United States v. Vasquez, supra,* 476 F.2d 730 (5th Cir. 1973); *United States v. DeBartolo, supra,* 482 F.2d 312 (1st Cir. 1973); *United States v. Gardner,* 448 F.2d 617 (7th Cir. 1971).

The judgment is affirmed.